CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 09 2005

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| BRENDA J. CARPENTER, | ) | CASE NO. 3:04CV00094 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | By: B. Waugh Crigler |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| Defendant, | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's July 29, 2002 claim for a period of disability and disability income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case to the Commissioner for the sole purpose of calculating and paying benefits.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff met the special earnings requirements of the Act through the date of his decision. (R. 25.) He also determined that the medical evidence established

1

plaintiff suffered the impairments of a major depressive disorder and a history of panic/anxiety disorder, which were severe but which did not meet or equal the requirements of any listed impairment. (R. 25.) The Law Judge further found that plaintiff's allegations regarding her limitations were not fully credible. (*Id.*) Thus, he found that plaintiff possessed the residual functional capacity, notwithstanding her impairments, for work at any exertional level with the limitations that the work "not frequently require the ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods"or have interaction with co-workers that could be distracting. (*Id.*) Finding that plaintiff's past relevant work required a greater level of concentration and memory than plaintiff was able to exhibit, the Law Judge concluded that she was unable to perform any of her past relevant work. (R. 23.) By application of the Medical-Vocational Guidelines and with reference to a portion of the testimony of a vocational expert (VE), the Law Judge determined that jobs were available to the plaintiff in the economy. (R. 25.) Accordingly, the Law Judge determined that plaintiff was not disabled under the Act and denied plaintiff's claim for benefits.

While the case was on administrative appeal to the Appeals Council, plaintiff submitted a letter outlining the reasons she disagreed with the decision. (R. 204.) The Appeals Council summarily concluded that neither the reasons advanced nor the record as a whole provided a basis for granting a request for review. (R. 5-7.) Thus, the Appeals Council denied review and adopted the Law Judge's decision as a final decision of the Commissioner. This action ensued.

In the instant case, the Law Judge found that plaintiff had carried her initial burden in the sequential evaluation process by demonstrating that her severe impairments prevented her from performing her past relevant work. (R. 25.) Thus, the burden shifted to the Commissioner to demonstrate both the plaintiff's residual functional capacity and that gainful work was available to

2

her in significant numbers in the national economy, considering the combined effects of the plaintiff's maladies within the context of her age, education, skill level, and work experience. 20 C.F.R. §§ 404.1520(f)(1), 404.1545-1568 , 416.920(f)(1) and 416.945-968. If the Commissioner does not discharge her sequential burden, then the claimant is entitled to benefits on the *prima facie* case of disability. *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984). Where plaintiff's ability to perform work-related activities is limited by nonexertional limitations, the Commissioner can discharge her burden only by the presentation of vocational evidence.*Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *McLain v. Schweiker*, 715 F.2d 866 (4th Cir. 1983); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987).

The Commissioner is charged with making the initial evaluation of the medical evidence, assessing symptoms, signs and findings, and, in the end, determining the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545;*Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The court should not substitute its judgment for that of the Commissioner in the matters, but must determine whether there is substantial evidence to support her conclusions. On the other hand, it is axiomatic that courts may remand a case to the Commissioner for the further development of the evidence where "good cause" has been shown. 42 U.S.C. § 405(g). What constitutes "good cause" draws beyond the boundaries of the substantive merits of the claim as presented in the record and is not constrained by whether the Commissioner's decision might have been supported by substantial evidence at the time of judicial review.*Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981). Failure to provide "a full and fair hearing . . . and the failure to have such a hearing may constitute good cause sufficient to remand to the [Commissioner] under 42 U.S.C. § 405(g) for the taking of additional evidence."*Sims v. Harris*, 631 F.2d 26, 27 (4th Cir. 1980).

In a brief filed in support of her motion for summary judgment, plaintiff asks that the agency decision be reversed because the substantial evidence shows that her depressive disorder imposes limitations which prevent her from engaging in gainful activity. The undersigned's review of the record certainly discloses that all those medical sources who had an opportunity to examine plaintiff, whether treating or consultative and whether secured by plaintiff or the state agency, were of the view that plaintiff suffered limitations on her work-related function that, according to the Commissioner's VE would foreclose the availability of jobs in the economy. Only the DDS record reviewers, and the DDS reconsideration staff were of the view that plaintiff did not suffer those limitations, which opinions the Law Judge, remarkably, gave essentially exclusive weight in arriving at his conclusions, namely that plaintiff's evidence was less that totally credibility and she possessed the capacity to perform work-related activities for which gainful employment was available.

Under the Commissioner's own regulations, the opinions submitted by treating sources are to be given great, if not "controlling" weight when such evidence is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. §404.1527(d)(2). The Law Judge, and ultimately the Commissioner, must give "good reasons" for assigning weight, if any, to such treating source evidence. *Id.*

Here, the law Judge discounted almost every report from treating and examining sources which bears on plaintiff's functional limitations. For example, he discredited the evidence of plaintiff's treating therapist on the ground that her Mental Limitations Assessment was not supported by "clinical findings" and because he perceived that there was no connection made by the therapist between the worsening of plaintiff's condition when not on medication and its

4

improvement while on medication.(R. 21.) In reaching his decision not to credit this evidence, the Law Judge ignored unchallenged treating evidence revealing that plaintiff experienced "trouble remembering simple things that are told to her even 5 minutes later," as well as other references to the effects of plaintiff's impairment on her ability to function in a work environment. (*See e.g.* R. 137.) In other words, for the Law Judge to have reached his conclusions about the weight given plaintiff's treating therapist, he was required to ignore clear and unchalleged record evidence and then exercise an expertise he did not have. The undersigned cannot explain how this escaped the notice of the Appeals Council.

In addition, there was evidence submitted by the state agency consultative examiner, David Leen, Ph.D., which was entirely consistent with that of plaintiff's treating sources. Specifically, Dr. Leen was of the opinion that it was unlikely plaintiff could maintain reliable attendance, and he viewed plaintiff's ability to appropriately deal with coworkers, supervisors or the public as "substantially impaired." (R. 166.) He further was of the opinion that plaintiff "would probably find the usual stressors of competitive work overwhelming." (*Id.*) Moreover, a Department of Rehabilitation Services (DRS) report indicates that plaintiff was limited part time work, and even then, there were serious questions about "her readiness at this time to participate in competitive employment... ." (R. 119.) While the Law Judge mentioned Leen's findings, he never explained why they were given no weight. He summarily dismissed the DRS evidence as unsupported by the clinical evidence and not consistent with "incapacitating mental impairments." (R. 21.) Nothing could be further from the truth.

Further, the Law Judge relied on his perception that plaintiff's daily activities warranted discounting most all the record evidence that was favorable to the plaintiff. (R. 21.) While the Commissioner certainly has regulatory authority to consider a claimant's daily activities in

5

evaluating a claimant's subjective symptoms, including pain, and their effect on the claimant's ability to perform work-related activities, that authority is not boundless. See, e.g. 20 C.F.R. §§ 404.1529(3)(I) and 416.929(3)(I); *Gross v. Heckler*, 785 F. 2d 1163 (4th Cir. 1986). Daily activities must be vocationally relevant in that they must reveal an ability to perform work-related activity within the constraints and demands of the workplace.[1] In this case, plaintiff's daily activities did not rise to the level of demonstrating an ability to withstand the stress of the workplace. Plaintiff testified that she was able even to get her children ready for school and go grocery shopping two days per week, and that she had been unable to attend any of her son's football games because she was unable to be around people. (R. 216, 218-219.) Such limited activities certainly are not inconsistent with the very type of mental impairment the Law Judge found plaintiff to suffer.

The final credibility-related issue relates to what the Law Judge viewed as plaintiff's lack of continued compliance with treatment and other recommendations. (R. 21, 23.) The record reflects that plaintiff's noncompliance either is a product of her malady or stems from the lack of financial resources, or both, neither of which is a reasonable basis to discredit her or her treating and examining sources. *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984); *Futrell v. Shalala*, 852 F. Supp. 437 (E.D.N.C. 1994).

As mentioned above, the Commissioner had the burden at the fifth level of the sequential evaluation to demonstrate that there were jobs available in the economy to someone with plaintiff's functional limitations. The Law Judge's questions did not include all the limitations revealed by the substantial evidence, only those revealed by the DDS review, which the undersigned finds insubstantial. Plaintiff's counsel posed a question to the VE encompassing the limitations noted by

---

[1] *See Miller v. Bowen*, 877 F.2d 60, 1989 WL 64121 (4th Cir. 1989)(UP).

the DRS and the consulting psychologist concerning plaintiff's inability to reliably attend work. The VE testified that all the jobs he had identified in response to the Law Judge's questioning were all "full-time, competitive work settings" and not available to such a person. (R. 229.)

In the end, the undersigned is of the view that the Commissioner failed to discharge her burden in the sequential process. Therefore, it is RECOMMENDED that an order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
U. S. Magistrate Judge

8/9/05
Date